**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM H. THEIL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-1516 |
| | ) | |
| v. | ) | Judge McVerry |
| | ) | Magistrate Judge Caiazza |
| WEST MIFFLIN BOROUGH, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Defendant's Motion for Summary Judgment (Doc. 14) be granted without prejudice regarding the Plaintiff's claim for punitive damages, but in all other respects denied.

**II.   REPORT**

**BACKGROUND**

William H. Theil ("Officer Theil" or "the Plaintiff") has filed this age discrimination lawsuit against his current employer, complaining of its failure to promote him to the position of police sergeant. *See generally* Compl. (Doc. 1). The Plaintiff and other candidates were given a promotion examination, with three parts:  an oral exam weighted at 20%; a written exam worth 70%; and "Chief Points" weighted at 10%. *See generally* Def.'s Statement of Material Facts (Doc. 16) at ¶ 15 (citing record evidence).  The Chief Points were awarded

by Police Chief Frank Diener, and were "purely subjective in nature."  *Id.* at ¶ 25.

Officer Theil scored 83% on the oral exam, which ranked ninth amongst the candidates; he scored 79.3% on the written exam, and ranked fourth; and he was awarded 9.1 Chief Points, which ranked third.  *Id.* at ¶¶ 20, 23, 26.  These scores gave him the fourth place candidate overall, and four officers ultimately were promoted to sergeant.  *See* Def.'s Br. (Doc. 15) at 7; Def.'s Facts at ¶ 75.  The Plaintiff was not one of them.

Instead, the seven-member West Mifflin Borough Council awarded promotions to the first through third-ranked candidates and the fifth, Kenneth Davies ("Officer Davies").  *See* Def.'s Facts at ¶¶ 31, 75.  According to the Defendant, Officer Davies was chosen over the Plaintiff because, (a) the Council uncovered irregularities in the assignment of Chief Points, resulting in an inflation of the Plaintiff's score and a deflation of Officer Davies' (*see generally* Def.'s Br. at 8-9); and (b) because of the Plaintiff's responsibilities at Police Headquarters, he had not spent sufficient time "patrolling . . . the road."  *See id.* at 7-8; Def.'s Facts at ¶ 74.[1]

_____

[1]  As a third non-discriminatory reason, the Defendant cites the "Rule of Three" applied under Pennsylvania's Civil Service Code, 4 Pa. Code § 91.3.  *See* Def.'s Br. at 7.  The Rule permits an appointing authority to choose "from among the three highest-ranking available eligibles [to] fill[] a particular vacancy."  *Id.*  According to counsel, the Rule of Three allowed the Council to promote the successful candidates here because they fell "within . . . appropriate

**ANALYSIS**

Within the context of employment discrimination, a plaintiff may proceed either by presenting "direct evidence" of discrimination under *Price Waterhouse*, or through "indirect evidence" of discrimination that satisfies the familiar three-step framework under *McDonnell Douglas*. *See generally* Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (citations omitted). The Plaintiff survives summary judgment under both standards.

As for *Price Waterhouse*, the Plaintiff has testified regarding the remarks of Councilman Albert Kopay, who acted as Chairman of the Police Committee. *See* Def.'s Facts at ¶ 6. According to Officer Theil, just three days before the promotion decisions were made, Mr. Kopay told him he "didn't have the votes" to succeed with his application:

> [T]here's seven council people, two of us don't talk to each other, but [the] five that do . . . talked about it [*i.e.*, Theil's promotion to sergeant], and couldn't understand why you would want to go back on the road in the twilight of your career.

---

groupings of three . . . eligible candidates." Def.'s Br. at 9-10. While this may be the case, it does not provide a legitimate non-discriminatory reason for not promoting the Plaintiff. Assuming, for example, the Defendant admitted that age discrimination motivated its decision not to promote Officer Theil, the Rule of Three would not "trump" the ADEA and allow the Defendant to escape liability. While the Defendant obviously makes no such admission, its Rule of Three argument merely begs the ultimate question, namely, why the successful candidates were chosen and the Plaintiff was not.

> Why you would want to give up steady daylight
> and weekends off <u>at your age</u>.

*Id.* at ¶¶ 68-69 (emphasis added).

This is textbook evidence of direct discrimination under *Price Waterhouse*. *See* <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 338-39 (3d Cir. 2002) ("'[d]irect evidence' means evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision," and "[s]uch evidence leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it") (citations and some internal quotations omitted).

Defense counsel dismisses Mr. Kopay's alleged statements as "stray remarks," "unrelated to the adverse employment decision." *See* Def.'s Br. at 12-13.  The undersigned begs to differ.  These purported statements were made just three days before the Council announced its promotion decisions, and they were made within the context of explaining why the Plaintiff "didn't have the votes" to receive the promotion.  *See* discussion *supra*.  It is hard to imagine more temporal evidence of discrimination directly relating to the adverse employment decision.

Counsel also argues that the purported ageist comments were limited to Mr. Kopay, and they are irrelevant given the other six members' decision to decline the Plaintiff's application.

-4-

*See* Def.'s Br. at 12.  Mr. Kopay's alleged statements, however, logically may be read as attributable to five of the seven Council members (indeed, the only five that would speak to one another).  *See* discussion *supra* ("[the] five . . . [of us who] talked about it . . . couldn't understand why you . . . . would want to give up steady daylight and weekends off at your age").  The damage of this purported statement cannot be limited to Mr. Kopay, and summary judgment is inappropriate.

The Plaintiff also reaches a jury under *McDonnell Douglas*.  To rebut the Defendant's non-discriminatory reasons, the evidence must show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a reasonable factfinder could find them unworthy of credence.  *See* <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

The most obvious contradiction comes directly from the Defendant's own statements of fact.  As referenced above, the promotion decisions were based on three weighted criteria, an oral exam (20%), a written exam (70%), and "Chief Points" (10%).  *See* discussion *supra*.  By the Defendant's admission, the Points awarded by Chief Diener and were "purely subjective in nature."  *Id.*  The Plaintiff did quite well under the Chief Points criterion, and it was only through the Council's tweaking of the Points assigned to Officers Davies and Theil that the former

surpassed the latter to attain the fourth and final promotion. *See id.*[2]

The problem for the Defendant, however, is the Council's disclaimer of authority with respect to the promotion criteria. To counter the Plaintiff's argument that an agility test was excluded because the Council knew Officer Davies could not have passed it, the Defendant states:

> The West Mifflin Borough Council did not monitor the Civil Service testing . . . administered relative to these promotions. . . . [The] Council <u>had no input or insight as to how the promotion testing would be conducted</u>. In fact, <u>Council President William Welsh testified that '[a]ll we . . . do is get the results and make a decision</u>.'

Def.'s Facts at ¶¶ 13-14 (citing record evidence, emphasis added).

This evidence is in plain contradiction to the Council's decision to alter the Chief Points awarded to Officers Theil and

---

[2]  The Defendant does not dispute that, in assigning the fourth promotion, it came down to a decision between Officers Theil and Davies. *Cf., e.g.*, Def.'s Br. at 8-9 (explaining that Davies got promotion because Plaintiff "jumped" over him into fourth spot based on allegedly improper Chief Points assignment). At the time of the promotion, the Plaintiff was age 52 and Officer Davies was 40. *See* Pl.'s Resp. to Def.'s Facts (Doc. 17) at ¶ 3 (Plaintiff's age); Def.'s Facts at ¶ 79 (Davies' age). The District Court should conclude, as a matter of law, that Officer Davies was a "sufficient younger" individual for the purposes of the ADEA. *See* <u>Showalter v. UPMC</u>, 190 F.3d 231, 235 (3d Cir. 1999) (under "the sufficiently younger standard, . . . there is no particular age difference that must be shown, [although] [d]ifferent courts have held . . . that a <u>five year difference</u> can be sufficient") (citation and internal quotations omitted, some alterations supplied, emphasis added).

Davies.  The Defendant's deviation from its own promotion standards, especially given the Council's testimony it exercised no independent discretion, is sufficient evidence of pretext to survive summary judgment.

The Council's explanation for downgrading Officer Theil is further discredited by the members' decision to interfere with the admittedly "subjective" assessments of Chief Diener.  *See* discussion *supra*.  According to the Defendant, Chief Diener "confessed" that he awarded the Plaintiff "extra points" because he was "passed over before for the promotion to sergeant and [the Chief] didn't want to see it happen again."  Def.'s Facts at ¶ 33.  Even assuming the Council properly had discretion to overrule Chief Diener's subjective assessment (a discretion otherwise expressly disclaimed), no improper or nefarious purpose can be implied by the Chief's determination that Officer Theil should not again be passed over.  Rather, this would appear the very type of consideration that the use of a subjective criterion would be intended to encompass.  It is reasonable to conclude that Chief Diener was familiar with the applicants and well suited to assess their abilities and qualifications, and if his senses of loyalty and fairness caused him to endorse the long-serving Officer Theil, there would appear little basis for overruling him.  Under the circumstances, the Council's decision to meddle with the Chief Points determination reflects the

weakness, inconsistency, incoherency and/or contradiction contemplated in <u>Fuentes</u> and, reading the evidence in a light most favorable to the Plaintiff, it provides further evidence of pretext.

Next is the Council's criticism that the Plaintiff had not spent enough time "patrolling . . . the road." *See* discussion *supra*. As the Defendant itself explains, this purported deficiency resulted from the Plaintiff's fulfillment of numerous job responsibilities requiring him to remain at Headquarters. *See* Def.'s Facts at ¶¶ 42-47 (Plaintiff acted as Police Department's TAC officer, "the Borough's liaison with the Pennsylvania State Police" who maintains its "Commonwealth Law Enforcement Assistance Network"); *id.* at ¶¶ 48-50 (Plaintiff maintained Borough's "Justice Network System"); *id.* at ¶¶ 51-52 (acted as "liaison with the Allegheny County 911 dispatch center"); *id.* at ¶¶ 53-55 (responsible for Department's "dealings with the Pennsylvania Emergency Management Agency"); *id.* at ¶¶ 56-59 (acted as "the Department officer responsible for dealing with the Federal Communications Commission"); *id.* at ¶¶ 60-61 (acted as "Information Security Officer," position "mandated by the Pennsylvania State Police"); *id.* at ¶¶ 62-63 (served as "Police Department['s] computer system administrator"); *and id.* at ¶ 64 (was assigned "Homeland Security responsibilities").

There is no evidence to demonstrate that most or all of these responsibilities were undertaken by the Plaintiff as a result of mere generosity and good will. To the contrary, the record reveals that Officer Theil's services were both valuable and necessary to the functioning of the Department's operations. *See* Def.'s Statements of Fact, summarized *supra*. The fact finder reasonably could conclude that Officer Theil's efforts were commendable and should have been rewarded; not punished through the denial of a promotion to a higher paying job. *Cf.* Pl.'s Resp. to Def.'s Facts (Doc. 17) at ¶ 4.D ("[a]t the time of the events in question, [the] Plaintiff's rate of compensation was $28.88/hr." and, "[b]y contrast, sergeants then earn[ed] $30.73").

Again reading the evidence in a light most favorable to the non-movant, the Defendant assigned the Plaintiff to responsibilities requiring his presence at Headquarters, then denied him a promotion because those responsibilities prevented him from spending more time "on the road." *See* discussions *supra*. This treatment appears not only unfair, but is a basis for the jury to conclude the Defendant's proffered legitimate reason was weak, implausible, inconsistent, incoherent, and contradictory.

The Plaintiff survives summary judgment under *Price Waterhouse* and *McDonnell Douglas*, and the Defendant's Motion should be denied.

The Defendant's remaining arguments may be quickly disposed of.  In its reply brief, counsel complains of numerous procedural and substantive deficiencies in the Plaintiff's responses to the Motion for Summary Judgment.  *See generally* Def.'s Reply Br. (Doc. 22).  To be sure, the Plaintiff's response fairly may be characterized as unconventional, to put it kindly.  As seen above, however, all of the substantive bases for denying summary judgment come from the Defendant's own Motion papers.  Even had the Plaintiff not responded to the Motion, the court remains charged with the responsibility of determining whether the Defendant has shown its entitlement to judgment as a matter of law.  *See* Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994) ("[e]ven if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only 'if appropriate'";  "the court still must ascertain that judgment is proper as a matter of governing law") (citations and some internal quotations omitted).

The Defendant also argues the Plaintiff has failed to satisfy the *prima facie* element that he was "qualified" for the promotion he sought.  *See* Def.'s Br. at 5-6 (arguing Officer Theil's responsibilities at headquarters prevented him from being "on the road," experience allegedly required for sergeant position).  This argument is specious, given the Defendant's admission the Plaintiff was considered for the position but

-10-

beaten out by Officer Davies.  In any event, counsel's *prima
facie* argument bears little relationship to the applicable law.
*See* <u>Scheidemantle v. Slippery Rock Univ. State Sys. of Higher
Educ.</u>, 470 F.3d 535, 539 (3d Cir. 2006) (in cases "involving a
dispute over subjective qualifications, we have recognized that
the qualification issue should often be resolved in the second
and third stages" of *McDonnell Douglas* "to avoid putting too
onerous a burden on the plaintiff in establishing a *prima facie*
case") (citations and internal quotations omitted).

Finally, the Defendant attacks the Plaintiff's claim for
punitive damages.  *See* Def.'s Br. at 14-15.  Counsel notes the
Complaint does not seek liquidated damages, which are permissible
under the ADEA, and argues that punitive damages are not
available under the theory of municipal liability.  *Id.*

Defense counsel has accurately stated the law.  The Court of
Appeals for the Third Circuit has confirmed that punitive damages
are not available against municipalities under the ADEA.  *See*
<u>Potence v. Hazleton Area Sch. Dist.</u>, 357 F.3d 366, 372 (3d Cir.
2004) ("[t]he general rule today is that no punitive damages
[against municipalities] are allowed unless expressly authorized
by statute," and ADEA contemplates only "liquidated" damages)
(citations and internal quotations omitted, some alterations in
original).  Despite the fact that "the liquidated damages

provision of the ADEA was intended to be punitive in nature,"
however, the Potence Court held such damages are available
against municipal defendants.  *Id.* at 373.

Here, the Plaintiff's pleadings make express reference to
punitive damages but omit a request for liquidated damages.  *See*
Compl. at ¶ 28 and Wherefore clause at (c).  The Defendant's
objection, though, raises form over substance.  The Complaint
makes clear that Officer Theil is seeking exemplary damages, and
the District Court should not attach great weight to counsel's
having mislabeled the request.  Leave to amend is freely given,
and "the touchstone for the denial of an amendment" is
"substantial or undue prejudice to the nonmoving party."  USX
Corp. v. Barnhart, 395 F.3d 161, 166 (3d Cir. 2004) (citations
and internal quotations omitted), *cert. denied*, -- U.S. --,
126 S. Ct. 420 (2005).

There are no indicia of substantial or undue prejudice in
this case, and the District Court's grant of summary judgment
regarding the Plaintiff's claim for punitive damages should be
made without prejudice to his amendment of the Complaint to state
a claim for liquidated damages.[3]

---

[3]  Should the Plaintiff wish to keep this case moving forward, his
counsel may file a motion for leave to amend during the objections
period.  Presuming the District Court elects to adopt this Report and
Recommendation, it will then have a pending motion before it so that
leave to amend may be granted.

**CONCLUSION**

For all of the reasons stated above, the Defendant's Motion for Summary Judgment (Doc. 14) should be granted without prejudice regarding the Plaintiff's claim for punitive damages, and in all other respects denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by March 22, 2007.  Responses to objections are due by April 2, 2007.


March 6, 2007

Francis X. Caiazza
U.S. Magistrate Judge

cc:

J. Michael Klutch, Esq.
Marie Milie Jones, Esq.
Joseph J. Chester, Esq.

-13-